# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAGED SALEH MOHAMMED SHAIBI,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 1:14-cv-00948-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL |

Plaintiff Maged Saleh Mohammed Shaibi ("Plaintiff") filed this action seeking judicial review of the final decision of Defendant Commissioner of Social Security ("Defendant" or "Commissioner") denying Plaintiff's application for benefits under the Social Security Act. (ECF No. 1.) All parties have consented to the jurisdiction of a United States Magistrate Judge for all purposes. (ECF Nos. 10, 11.)

Plaintiff applied for Social Security benefits due to impairments related to lumbosacral degenerative disc disease, depressive disorder, anxiety disorder, diabetes mellitus, obesity, and osteoarthritis. For the reasons set forth below, Plaintiff's appeal from the final decision of the Commissioner is denied.

/ / /

/ / /

/ / /

# I.

# FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff applied for Disability Insurance Benefits on May 2, 2011. (AR 144.) Plaintiff's application was denied on September 19, 2011. (AR 84.) Plaintiff requested reconsideration of the denial on November 2, 2011. (AR 91.) Plaintiff's application was denied upon reconsideration on February 1, 2012. (AR 92.) Plaintiff requested a hearing on February 22, 2012. (AR 98.)

On January 23, 2013, a hearing took place before Administrative Law Judge Danny Pittman ("the ALJ"). (AR 35.) On February 21, 2013, the ALJ issued his written decision finding Plaintiff to be not disabled. (AR 15-30.) On April 23, 2014, the Appeals Council denied Plaintiff's request for review. (AR 1.)

## A.   The ALJ's Findings

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff has not engaged in substantial gainful activity since January 1, 2011, the alleged onset date;

- Plaintiff has the following severe impairments: lumbosacral degenerative disc disease, depressive disorder, anxiety disorder, diabetes mellitus, obesity, and osteoarthritis;

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;

- Plaintiff has the residual functional capacity to lift and/or carry ten pounds occasionally and less than ten pounds frequently, stand and/or walk for four hours during an eight-hour workday and sit without limitation, requires a cane for walking long distances, can occasionally balance, kneel, crawl, climb, and walk on uneven terrain, cannot climb ladders, ropes, or scaffolds or work at heights, and is limited to simple routine tasks in a non-public setting with occasional interaction with coworkers;

---

[1] Citations to the Social Security Administrative Transcript will be designated as "AR" (administrative record). Page numbers will refer to the page numbers as stamped and indexed in the lodged transcript. (See ECF No. 12.)

- Plaintiff is unable to perform any past relevant work;
- Plaintiff was born on May 1, 1978 and was 32 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date;
- Plaintiff has at least a high school education and is able to communicate in English;
- Transferability of job skills is not an issue in this case because the Plaintiff's past relevant work is unskilled;
- Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform;
- Plaintiff has not been under a disability, as defined in the Social Security Act, from January 1, 2011 through the date of the ALJ's decision.

(AR 20-30.)

**B.    Relevant Portions of the Administrative Record**

Plaintiff raises two issues on appeal: 1) that the ALJ erred in assessing the opinions of the examining and non-examining physicians pertaining to Plaintiff's mood/mental disorder, and 2) that the ALJ erred in relying on the testimony of the vocational expert. The relevant excerpts from the administrative record concerning these issues are summarized below.

1.    Medical Record

Dr. Roger A. Izzi authored a psychiatric evaluation dated July 23, 2011. (AR 266-269.) Dr. Izzi's "Functional Assessment" of Plaintiff is as follows:

> The claimant presents with multiple medical problems. Pain is a predominant feature. The claimant's mood disorder will fluctuate as his subjective perception of pain fluctuates. The present mental status examination suggests that cognitive functioning remains intact.
>
> Clinical interview indicates that the claimant is not having any difficulty caring for basic hygiene. The present evaluation suggests that the claimant does appear capable of performing a simple and repetitive type task on a consistent basis over an eight-hour period. His ability to get along with peers or be supervised in work-like setting would be moderately limited by his mood disorder. The claimant's mood disorder can be expected to fluctuate as his subjective perception of pain fluctuates. Any significant fluctuation of mood would limit his ability to perform a

> complex task on a consistent basis over an eight-hour period. On a purely psychological basis, the claimant appears capable of responding to usual work session situations regarding attendance and safety issues. On a purely psychological basis, the claimant appears capable of dealing with changes in a routine work setting.

(AR 268.)

Dr. Laura Lochner authored a Mental Residual Functional Capacity Assessment dated September 3, 2011. (AR 277-280.) Dr. Lochner opined that Plaintiff was "Moderately Limited" in the categories of "[t]he ability to understand and remember detailed instructions," "[t]he ability to maintain attention and concentration for extended periods," and "[t]he ability to interact appropriately with the general public." (AR 277-278.) Relevant to this appeal, Dr. Lochner opined that Plaintiff was "Not Significantly Limited" in the categories of "[t]he ability to accept instructions and respond appropriately to criticism from supervisors" and "[t]he ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes." (AR 278.) Dr. Lochner further wrote that:

> Claimant can perform simple and some complex tasks.
> Claimant can relate to others on a superficial work basis.
> Claimant can adapt to a work situation.

(AR 279.)

    2.    <u>Vocational Expert Testimony</u>

Thomas Dachelet testified as a vocational expert at the hearing before the ALJ ("the VE"). (AR 64.) Relevant to this appeal, the VE testified that someone with Plaintiff's residual functional capacity could perform work as a leaf tier, ampule sealer, or weight tester-paper. (AR 66.) The VE reported the following job numbers for these occupations: leaf tier (5,236 jobs in California, 48,438 jobs in the nation), ampule sealer (3,087 jobs in California, 22,259 jobs in the nation), and weight tester-paper (1,539 jobs in California, 13,496 jobs in the nation). (AR 66.)

## II.

## LEGAL STANDARDS FOR JUDICIAL REVIEW OF SOCIAL SECURITY DETERMINATIONS

An individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). The Court "reviews the

1 Commissioner's final decision for substantial evidence, and the Commissioner's decision will be
2 disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v.
3 Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means more than a
4 scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)
5 (internal quotations and citations omitted). "Substantial evidence is 'such relevant evidence as a
6 reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Richardson v.
7 Perales, 402 U.S. 389, 401 (1971)). "[A] reviewing court must consider the entire record as a
8 whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill,
9 698 F.3d at 1159 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).
10 However, it is not this Court's function to second guess the ALJ's conclusions and substitute the
11 Court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)
12 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's
13 conclusion that must be upheld.").

### III.

### DISCUSSION AND ANALYSIS

16 Plaintiff argues that the ALJ erred in assessing the opinions of the medical sources with
17 respect to Plaintiff's mental limitations. Plaintiff also argues that the ALJ erred in assessing the
18 VE's testimony regarding the number of jobs which exist in the national economy that Plaintiff
19 can perform.

20 **A.    The ALJ Did Not Err in Assessing the Opinions of Dr. Izzi and Dr. Lochner**

21 Plaintiff argues that the ALJ erred in assessing the opinions of Dr. Izzi and Dr. Lochner.
22 Specifically, Plaintiff contends that the ALJ erred by "washing out" the opinions of Dr. Izzi and
23 Dr. Lochner in regards to a moderate limitation in interacting with supervisors and coworkers
24 and a limitation to superficial contact with others. Plaintiff argues that the ALJ failed to properly
25 incorporate Dr. Izzi's opinions in the residual functional capacity.

26 With respect to Plaintiff's workplace social interactions, the ALJ determined that Plaintiff
27 "is limited to simple routine tasks in a non-public setting, with occasional interaction with
28 coworkers." (AR 22.)  The ALJ gave "significant weight" to Dr. Izzi's opinions and Dr.

1  Lochner's opinions.  (AR 26.)  The ALJ did not expressly reject any portion of Dr. Izzi's
2  opinions.  The ALJ rejected Dr. Lochner's opinion that Plaintiff could perform semi-skilled work
3  and adopted Dr. Izzi's opinion that Plaintiff could only perform unskilled work, which was a
4  deviation in Plaintiff's favor.  (AR 26.)

5  Plaintiff argues that the ALJ failed to fully and accurately incorporate Dr. Izzi's opinions
6  into the residual functional capacity assessment because Dr. Izzi's opinions of "moderate
7  limitation in interacting with supervisors and coworkers" and Dr. Lochner's "can relate to others
8  on a superficial work basis" is not equivalent to the ALJ's "limited to simple routine tasks in a
9  non-public setting, with occasional interaction with coworkers."

10  Between Step Three and Step Four of the sequential evaluation process, the ALJ must
11  determine the claimant's residual functional capacity.  20 C.F.R. § 404.1520(e).  "Social Security
12  regulations define residual functional capacity as the 'maximum degree to which the individual
13  retains the capacity for sustained performance of the physical-mental requirements of jobs.'"
14  Reddick v. Chater, 157 F.3d 715, 724 (9th Cir. 1998) (quoting 20 C.F.R. § 404.1512(a)).  The
15  residual functional capacity assessment is based on all the relevant medical and other evidence in
16  the case record.  20 C.F.R. § 404.1520(e).

17  While Social Security appeals commonly challenge an ALJ's decision to reject the
18  opinion of a physician and resolve conflicting medical evidence, see Lester v. Chater, 81 F.3d
19  821, 831 (9th Cir. 1995), the ALJ in this case did not reject Dr. Izzi's opinion or resolve a
20  conflict in the evidence.  Instead, Plaintiff challenges the ALJ's interpretation of Dr. Izzi's
21  opinion.  Whereas the ALJ interpreted Dr. Izzi's opinions and Dr. Lochner's opinions to equate
22  to a limitation "to simple routine tasks in a non-public setting, with occasional interaction with
23  coworkers," Plaintiff argues that Dr. Izzi's statements require more restrictive limitations.

24  The Court finds that the ALJ's interpretation and assessment of Dr. Izzi's report and Dr.
25  Lochner's report is supported by substantial evidence and the ALJ committed no error in his
26  assessment of Plaintiff's residual functional capacity.  The ALJ took two statements from the
27  reports (Dr. Izzi's "His ability to get along with peers or be supervised in work-like setting
28  would be moderately limited by his mood disorder" and Dr. Lochner's "Claimant can relate to

others on a superficial work basis") and interpreted those statements to equate to a limitation of only "occasional interaction with coworkers." The ALJ's interpretation and assessment of Dr. Izzi's and Dr. Lochner's reports was reasonable. It is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's--"[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). The Court finds the ALJ's conclusion to be rational. While Plaintiff advocates a second conclusion that may have been rational from the medical record, it is the ALJ's conclusion that must be upheld.

Plaintiff focuses on Dr. Lochner's comment that "Claimant can relate to others on a superficial work basis" and argues that this statement must be incorporated into the residual functional capacity somehow. The Court finds that the ALJ's assessment did incorporate this segment of Dr. Lochner's report by limiting Plaintiff's interaction with coworkers to "occasional." It is worth noting that it is unclear how or why any person would need to cultivate relationships with coworkers beyond a "superficial work basis" in order to perform one's job duties. The pertinent inquiry during the residual functional capacity assessment is determining Plaintiff's capacity for sustained performance of his job requirements, not necessarily whether Plaintiff can cultivate deep emotional bonds with his coworkers.

Based upon the foregoing, the Court finds that the ALJ did not err in assessing the opinions of Dr. Izzi and Dr. Lochner.

**B.    The ALJ Did Not Err in His Assessment of the VE's Testimony**

Plaintiff argues that the ALJ erred in assessing the VE's testimony regarding the number of jobs which exist in the economy that Plaintiff could perform. Specifically, Plaintiff argues that the VE's testimony regarding the number of "leaf tier" jobs and "ampoule sealer" jobs which exist in the local and national economy is flawed because certain sources cited by Plaintiff suggest that the job numbers are lower than the numbers quoted by the VE.

With respect to the "leaf tier" occupation, Plaintiff argues that this particular occupation exists solely within the tobacco industry. Plaintiff further argues that "common sense" suggests that the tobacco industry does not have "large employment" in California that would support the

1 existence of the 5,236 jobs cited by the VE.  The Court rejects this "common sense" argument.  Whether the tobacco industry has a large presence within California is not a fact subject to judicial notice.

Plaintiff next argues that "County Business Patterns" and the "Bureau of Labor Statistics" suggests that the number of "leaf tier" jobs and "ampoule sealer" jobs in California and in the rest of the nation is far less than what was suggested by the VE.  There are several issues with Plaintiff's attempt to rely on this evidence on appeal.

First, this Court's role on appeal is to determine whether the ALJ's decision was supported by substantial evidence.  Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).  This analysis is generally limited to the evidence in the administrative record developed at the administrative level.  See Brewes v. Commissioner of Social Sec. Admin., 682 F.3d 1157, 1161-62 (9th Cir. 2012).  When a claimant attempts to present new evidence to the district court, they must demonstrate good cause for the failure to incorporate such evidence into the record in a prior proceeding.  42 U.S.C. § 405(g); Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001).  Plaintiff has failed to demonstrate good cause for his failure to present the "County Business Patterns" evidence to the ALJ at the administrative level.  Plaintiff presents no argument as to why this evidence was not presented at the administrative level.  Accordingly, the Court will not consider it here.

Second, the evidence relied upon by Plaintiff is unclear.  Plaintiff provides the Court with statistics from the "County Business Patterns" page found at the website for the United States Census Bureau.  According to the site, it provides tables of "subnational economic data by industry."  The table for "Tobacco Manufacturing" for the year 2013 suggests that 8 businesses exist in California in that category employing less than 19 people.  Plaintiff also cites evidence from the Bureau of Labor Statistics and claims that only 800 "leaf tier" jobs exist in the national economy.

However, Plaintiff provides no evidence that suggests that the "leaf tier" occupation defined in the Dictionary of Occupational Titles fall within the "Tobacco Manufacturing" category of the "County Business Patterns" table.  From the Court's perusal of the "County

1  Business Patterns" table, other categories could plausibly cover the "leaf tier" job, such as the
2  categories under "Agriculture, Forestry, Fishing and Hunting."  The Court is not persuaded by
3  Plaintiff's citation to one particular page in a website found on the Internet, unaccompanied by
4  any evidence explaining how this particular page speaks to the issue assessed by the ALJ and
5  VE.  Similarly, Plaintiff's evidence from the Bureau of Labor Statistics requires the translation of
6  one job code to another and assumptions regarding which industries are relevant for determining
7  accurate job numbers.  Plaintiff presents no evidence regarding the accuracy of these job code
8  translations or Plaintiff's assumptions regarding which particular industries the jobs described by
9  the VE are found, nor does it account for the possibility that the job code translations are
10 imperfect or that the jobs described by the VE span across multiple industries.

11         Plaintiff's failure to raise the "County Business Patterns" and "Bureau of Labor
12 Statistics" evidence at the administrative level also raises the issue of waiver.  "[W]hen claimants
13 are represented by counsel, they must raise all issues and evidence at their administrative
14 hearings in order to preserve them on appeal."  Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir.
15 1999).  If Plaintiff had raised this evidence at the administrative level, the VE could have
16 addressed it.  By raising the evidence for the first time before this Court on appeal, the
17 opportunity for the VE to address the issue has been lost.  Thus the issue raised by Plaintiff is
18 clearly one where the ALJ was in the optimal position to address.  See id. ("The ALJ, rather than
19 this Court, was in the optimal position to resolve the conflict between [the claimant's] new
20 evidence and the statistical evidence provided by the VE.")

21         Citing Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990), Plaintiff argues that he is
22 permitted to rely on "the Commissioner's own resources" in this appeal, even if the argument
23 was not presented at the administrative level.  Terry is not on point.  The Ninth Circuit did not
24 address the issue of waiver at any point in their opinion in Terry.  Plaintiff also cites Silveira v.
25 Apfel, 204 F.3d 1257, 1260 n.8 (9th Cir. 2000), for the proposition that the Court may address an
26 issue that is a pure question of law raised for the first time on appeal.  However, Plaintiff has not
27 presented a pure question of law.  Plaintiff has presented a question of fact by asking the Court to
28 resolve the evidentiary conflict between the VE's testimony and the sources cited by Plaintiff

regarding the number of jobs which exist in California and across the nation as a "leaf tier" or "ampoule sealer." Finally, this is not an issue that the Court must address to avoid "manifest injustice." Hall v. City of Los Angeles, 697 F.3d 1059, 1071-72 (9th Cir. 2012). Here, there has been no obvious error. Plaintiff merely found contrary evidence to rebut the VE's testimony. Such evidence should have been presented by Plaintiff at the administrative level.

Plaintiff also argues that the ALJ erred in accepting the testimony from the VE regarding Plaintiff's ability to perform work as a "Weight Tester, Paper," because the job's reasoning level put the occupation beyond Plaintiff's residual functional capacity. The Court need not address this argument because any error by the ALJ would be harmless. See Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1054-55 (9th Cir. 2006) (recognizing harmless error in the social security context). The number of jobs for "leaf tier" (5,236 in California, 48,438 in the nation) and "ampoule sealer" (3,087 in California, 22,259 in the nation) are sufficient to support the ALJ's conclusion that significant numbers of jobs existed in the economy which Plaintiff could perform. See Gutierrez v. Commissioner of Social Sec., 740 F.3d 519, 529 (9th Cir. 2014) (2,500 jobs in California and 25,000 jobs in the nation constituted a "significant number" in Social Security context).

Based upon the foregoing, the Court finds that the ALJ did not err in his assessment of the VE's testimony.

## IV.

## CONCLUSION AND ORDER

Based upon the foregoing, the Court finds that the ALJ's decision was supported by substantial evidence.

Accordingly, it is HEREBY ORDERED that:

1. Plaintiff's appeal from the administrative decision of the Commissioner is DENIED;
2. JUDGMENT is entered in favor of Defendant Commissioner of Social Security and against Plaintiff Maged Saleh Mohammed Shaibi; and

///

3.      The Clerk of the Court is directed to CLOSED this action.

IT IS SO ORDERED.

Dated:   **August 13, 2015**

UNITED STATES MAGISTRATE JUDGE